IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBBIE PITTMAN, | ) | CASE NO. 1:16 CV 2721 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Robbie D. Pittman under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

[6] ECF # 12.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**Facts**

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Pittman who was 43 years old at the time of the administrative hearing,[11] graduated from high school and lives with his wife and two children.[12] He has no past relevant work history.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Pittman had the following medically determinable impairments: status post heart transplant, gout, obstructive sleep apnea, headaches, and right upper extremity median nerve neuropathy.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Pittman's residual functional capacity ("RFC"):

---

[7] ECF # 21 (Commissioner's brief); ECF # 16 (Pittman's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 16-1 (Pittman's charts).

[9] ECF # 15 (Pittman's fact sheet).

[10] ECF # 25.

[11] ECF # 11, Transcript ("Tr.") at 43.

[12] *Id.* at 47-48.

[13] *Id.* at 30.

[14] *Id.* at 22.

Based on the impairments present as of May 1, 2012, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs. He can occasionally kneel, crouch, and crawl. He can occasionally reach overhead bilaterally. He can frequently handle and finger bilaterally. He must avoid concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas. He must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery and must avoid concentrated exposure to temperature extremes of hot, cold, and humidity.[15]

Pittman has no past relevant work history.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Pittman could perform.[17] The ALJ, therefore, found Pittman not under a disability.[18]

**B.     Issues on judicial review**

Pittman asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Pittman presents the following issues for judicial review:

- Whether the ALJ erred in assigning "little" and "some" weight to the opinions of Mr. Pittman's treating physicians and specialists.

---

[15] *Id.* at 24.

[16] *Id*. at 30.

[17] *Id*.

[18] *Id*. at 31.

- Whether the ALJ misstated the opinion of social security's consulting physician.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

# Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[19] ECF # 16 at 1.

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

## 2. Treating physician rule and good reasons requirement

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating

---

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had

---

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[39] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the

---

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

-11-

ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

**B.     Application of standards**

This case focuses on the assignment of lesser weight to the opinions of Pittman's treating physicians and the corresponding greater weight given to the opinion of a one time state consulting examiner.

As noted, Pittman had been previously found disabled due to cardiac conditions, but was here re-evaluated some ten years after undergoing a heart transplant.[69] To that point, the ALJ stated that Pittman's "recovery and ultimate stability of the transplant are documented

---

[65] *Id.* at 409-10.

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] Tr. at 25.

throughout the record," with diagnostic tests in 2012 confirming this fact.[70] Pittman himself does not contend that he is currently impaired by any former cardiac conditions, but asserts that migraines and gout, which flare up several times a month and are not consistently abated by medications, would cause frequent absences from any employment.[71]

The functional capacity opinions from treating sources at issue here are from:

(1) Dr. Randall Starling, M.D., who was Pittman's treating cardiologist at the Cleveland Clinic;[72]

(2) Dr. Marie Kuchynski, M.D., a rheumatologist;[73]

(3) Dr. David Taylor, M.D., another of Pittman's treating physicians.[74]

The functional capacity opinion from a state agency consulting examiner that Pittman contends was mis-analyzed[75] by the ALJ is from Dr. Samuel Ghoubrial, M.D. The opinions will be discussed below.

## 1. *Dr. Starling*

Dr. Starling gave both a mental functional capacity opinion and one assessing physical limitations.

---

[70] *Id.* (citing record).

[71] *Id.* at 27, 29; ECF # 16 at 5, 16.

[72] Tr. at 25-27, 29.

[73] *Id.* at 27-28.

[74] *Id.* at 25-26.

[75] *Id.* at 28.

Significantly, as to physical limitations, Dr. Starling stated in January 2014 that as a result of all identified impairments, including migraine attacks that cause loss of vision and dizziness, Pittman would, among other things, require a sit/stand option and need extra breaks every 90 minutes.[76] He also opined that Pittman's severe migraine pain would interfere with concentration, taking Pittman off task and causing absences.[77]

In December 2015, Dr. Starling noted Pittman was restricted due to post transplant stenting, and from right medial nerve neuropathy.[78] He once again opined that occasional chronic migraines and occasional to frequent gout attacks would interfere with concentration and cause absences.[79]

The ALJ stated that he "considered" Dr. Starling's comments about migraines, but then appears to dismiss the severity of any migraines by observing that "[d]espite the degree of pain alleged, [Pittman] continued to watch his children during the day."[80] The ALJ further dismissed the severity of both the migraines and the gout attacks by stating that despite these events, Pittman is "able to care for his children, cook, clean, drive and shop. He eats in restaurants and plays with his children at the park. He walks one mile a day and drives his

---

[76] *Id*. at 696-97.

[77] *Id.*

[78] *Id*. at 799-800.

[79] *Id.*

[80] *Id*. at 28.

children to school. These activities do not demonstrate the severity of limitations alleged by [Pittman]."[81]

The ALJ also dismissed Dr. Starling's functional restrictions based on gout attacks because "the evidence does not establish that [Pittman] has gout on a continuous basis that would limit standing or walking, nor require [Pittman] to elevate his leg.[82]

In reviewing these reasons for giving "some" weight[83] to Dr. Starling's opinion in these areas I find that the reasons are not "good reasons" sufficient to reduce the weight given to a treating source. As Pittman correctly notes, to reject limitations from gout because there is no evidence that gout causes a "continuous" impairment, is to ignore the multiple sources in the record that document that Pittman's gout attacks are occur episodically and are debilitating when they do happen. Nothing in Pittman's daily activity of caring for his children or occasionally eating dinner at a restaurant refutes the finding that being subject to regular, episodic and painful attacks of gout would clearly effect Pittman's capacity to do sustained work.[84]

---

[81] *Id*. at 29.

[82] *Id*.

[83] *Id*.

[84] *Ross v. Comm'r of Soc. Sec.*, No. 3:13CV20, 2013 WL 6001936, at *9 (S.D. Ohio Nov. 12, 2013)(citing 20 CFR § 416.945(b)).

## 2.     *Dr. Kuchynski*

The ALJ gave only little weight to the functional opinion of Dr. Kuchynski.[85] As with Dr. Starling, in 2014 Dr. Kuchynski stated that Pittman has gout, and that during flares of that condition he has severe pain that would take him off task, interfere with concentration and cause absence.[86] Dr. Kuchynski restated this opinion as to the limiting effects of gout in November 2015[87] and again in January 2016.[88]

As noted, the ALJ assigned little weight to these opinions, claiming that they were not supported by Dr. Kuchynski's progress notes and were "confined to periods of gout," which period, the ALJ stated, "vary."[89]

I note first as regards the comment regarding Dr. Kuchynski's progress notes that this remark is not specific, and so does not provide a basis for meaningful judicial review. Further, and as Pittman points out, Dr. Kuchynski's treatment notes show not only episodes of gout but also things like ankle swelling attributable to gout.[90] Finally, and for the same reasons stated in the analysis of the ALJ's treatment of Dr. Starling's opinions, simply noting that the

---

[85] Tr. at 30.

[86] *Id*. at 687-88.

[87] *Id.* at 798.

[88] *Id*. at 844-45.

[89] *Id.* at 30.

[90] ECF # 16 at 22 (citing record).

gout symptoms are intermittent does not refute their existence nor their effects on the ability to do continuous work.

Thus, I find that the reasons given for giving lesser weight to the functional opinion of this treating source are not good reasons.

### 3. Dr. Taylor

The ALJ here gave Dr. Taylor's opinion that Pittman needed additional break times and a sit/stand option only little weight for the reasons that the opinion is "inconsistent with the claimant's testimony regarding his activities, including his ability to walk a mile daily."[91]

As noted above, the use of activities of daily living to refute medical opinions as to the work-related effects of chronic, but episodic, conditions is perilous for an ALJ. Pittman's ability to do things even as strenuous as walking a mile, does not directly relate to his ability to do continuous work. Plainly, a mile walk may be done with intermittent rest breaks that would be fully compatible with Dr. Taylor's opinion, but done in a way incompatible with continuous work.

Accordingly, I find that the reasons given for assigning lesser weight to the functional opinion of Dr. Taylor are not good reasons.

### 4. Dr. Ghoubrial

In contrast to the lesser weight given multiple treating sources, the ALJ here gave significant weight to the functional opinion of Dr. Ghoubrial.[92] That opinion was that

---

[91] Tr. at 29.

[92] *Id*.

Pittman could do light work.[93] That term, as defined in the regulations, involves, among other things the ability to walk or stand for six hours in an eight-hour workday.[94]

As Pittman notes, Dr. Ghoubrial's opinion does not address at all any capacity for walking or standing, making it difficult for the ALJ to use it as evidence for that capacity.[95] Another state agency opinion that did call for light work with limitations on walking was only given "some" weight because the ALJ dismissed the walking restrictions for the reasons given above.[96]

The fact that the ALJ gave "significant" weight to Dr. Ghoubrial's opinion - which never addressed standing or walking - but gave just "some" weight to another state agency opinion that specifically included standing/walking limitations, is only explained by the ALJ by reference to evidence of daily activity that has already been discussed here and found to be not a good reason for diminishing the weight given. Moreover, as Pittman maintains, enhancing the weight given to Dr. Ghoubrial's opinion as it pertains to an element not addressed in that opinion also does not state a good reason for that decision.

---

[93] *Id*.

[94] See, SSR 83-10.

[95] ECF # 16 at 24.

[96] The ALJ limited the weight given to the opinion of Dr. Linda Hall, M.D., a state agency consultant who assessed a range of light work but limited standing and walking to two hours in total, in 15 minute increments due to gout. See, tr. at 30. The ALJ rejected those limitations by citing, once again, Pittman's mile walk and the fact that he cares for his children. *Id*.

## Conclusion

Therefore, for the reasons stated, I find that substantial evidence does not support the decision of the Commissioner to deny benefits to Robbie Pittman. Accordingly, that decision is hereby reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 30, 2018                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

## Conclusion

Therefore, for the reasons stated, I find that substantial evidence does not support the decision of the Commissioner to deny benefits to Robbie Pittman. Accordingly, that decision is hereby reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 30, 2018                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge